IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:20-2-2 |
| | ) | Judge Stephanie L. Haines |
| HAYDAR AL-KOFI | ) | |

**OPINION**

On May 19, 2022, Haydar Al-Kofi ("Defendant") pled guilty to conspiracy to defraud the

United States by committing food stamp fraud in violation of 18 U.S.C. § 371. Presently before

the Court is the Government's motion for restitution [Doc. 115], and Defendant's response in

opposition [Doc. 120]. For the following reasons, the Government's motion for restitution will be

denied, and the Court will not award restitution in this case.

I.     **Background**

On January 14, 2020, a grand jury returned a five-count indictment against Defendant and

co-defendant Laith Kadhem. Both were charged at Count One with conspiracy to defraud the

United States by committing food stamp fraud.[1] The gist of the scheme was that Kadhem, the

owner and operator of Anwar Fresh Meat Market, and Al-Kofi, his business partner, conspired to

exchange cash and ineligible items for Supplemental Nutrition Assistance Program ("SNAP")

benefits provided to eligible recipients by the United States Department of Agriculture Food and

Nutrition Service ("FNS"). Under the scheme, Anwar's Market accepted food stamps in exchange

for cash at a mark-up, roughly exchanging every $2 of SNAP redemptions for $1 in cash or

---

[1] Defendant Al-Kofi also was charged at Counts Two and Three of the indictment with food stamp
fraud in violation of 7 U.S.C. § 2024(b). Under the terms of the parties' plea agreement, Al-Kofi agreed
to enter a guilty plea only to Count One, and the Government has agreed to move to dismiss the remaining
counts after imposition of sentence [Doc. 111-1].

ineligible items.  There is no dispute, however, that in the first instance the SNAP benefits were given by the FNS to eligible recipients, who then used the benefits for an unintended purpose.

On July 13, 2022, the Government filed the pending motion for restitution in the amount of $121,677 to the FNS as an identifiable victim of the food stamp fraud conspiracy [Doc. 115]. Recognizing this Court's prior ruling denying their request for restitution from Al-Kofi's co-defendant Kadhem under the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, *see United States v. Kadhem*, 580 F.Supp.3d 132 (W.D.Pa. 2022), the Government instead seeks restitution from Al-Kofi under the discretionary Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663.  On July 29, 2022, Defendant filed a motion in opposition to the Government's restitution request, arguing that restitution should not be ordered because the FNS did not suffer any pecuniary loss as a direct result of Defendant's conduct [Doc. 120].

## II.      Standard

The VWPA provides that "a defendant convicted of an offense" <u>may</u> be ordered to "make restitution to any victim of such offense."  Restitution ordered under the VWPA is compensatory rather than punitive.  Awards are designed to compensate victims for their losses, rather than to serve retributive or deterrent purposes.  *Gov't of Virgin Islands v. Davis*, 43 F.3d 41, 47 (3d Cir. 1994).  A court has broad discretion in ordering restitution under the VWPA, *United States v. English*, 92 F.3d 909, 916 (9th Cir. 1996), and the VWPA does not mandate restitution in all circumstances.  *United States v. Owens*, 901 F.2d 1457, 1459 (8th Cir. 1990).

The burden of demonstrating the amount of loss under the VWPA is on the Government, and any dispute regarding the proper amount is to be resolved by a preponderance of the evidence. 18 U.S.C. § 3664(e); *see also United States v. Vitillo*, 490 F.3d 314, 330 (3d Cir. 2007).

## III.      Analysis

2

## A.   VWPA

As the Government acknowledges, this Court held in *Kadhem* that restitution was not authorized under the MVRA, which provides for mandatory restitution to identifiable victims of certain enumerated offenses against property, including offenses committed by fraud or deceit, who have "suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1). Under the MVRA, restitution must be limited to "an amount pegged to the actual losses suffered by the victims of the defendant's criminal conduct," and must be "based upon losses directly resulting from such conduct." *United States v. Quillen*, 335 F.3d 219, 222 (3d Cir. 2003) (quoting *Davis*, 43 F.3d at 45). Because the FNS suffered no actual pecuniary loss as a direct result of the defendant's conduct, but instead only non-economic harm in the form of diversion of benefits from their intended purpose after the resources already had been expended on legitimate recipients, the Court determined that restitution under the MVRA was not warranted. *Kadhem*, 580 F.Supp.3d at 140. For the same reasons, the Court also declined to exercise its discretion to order restitution against Kadhem under the VWPA. *Id.*

In light of the *Kadhem* ruling, the Government does not seek mandatory restitution from Al-Kofi under the MVRA. Rather, the Government now makes a renewed plea for restitution from Al-Kofi under the discretionary VWPA,[2] which provides that "a defendant convicted of an offense" *may* be ordered to "make restitution to any victim of such offense."

---

[2]  As a matter of statutory background, the VWPA, enacted in 1982, was the first modern federal restitution statute. When Congress enacted the MVRA in 1996, it amended the law governing restitution for criminal defendants in a number of respects, including, *inter alia*, by making restitution mandatory for certain enumerated offenses. *See United States v. Norwood*, 49 F.4th 189, 196-97 (3d Cir. 2022). The MVRA has augmented and partially, but not entirely, superseded the VWPA. *See United States v. Atl. States Cast Iron Pipe Co.*, 612 F. Supp. 2d 453, 461 (D.N.J. 2009) (citing *United States v. Leahy*, 438 F.3d 328, 331 n. 3–4 (3d Cir. 2006)). Both the VWPA and the MVRA are subject to the administrative procedures and enforcement provisions of 18 U.S.C. § 3664. *Id.* at 331 n. 4.

However, the VWPA, like the MVRA, correspondingly has been construed to authorize "restitution in an amount pegged to the actual losses suffered by the victims of the defendant's criminal conduct." *Davis*, 43 F.3d at 45. Furthermore, under either statute, the restitution obligation must be based upon losses directly resulting from such conduct. *Quillen*, 335 F.3d at 222 (quoting *Davis*, 43 F.3d at 45).

In *United States v. Fallon*, 470 F.3d 542, 549 (3d Cir. 2006), the Third Circuit recognized a two-prong test for determining whether harm suffered is a direct result of the criminal conduct of a defendant, and whether restitution therefore is appropriate. The first prong states that "[r]estitution should not be ordered in respect to a loss which would have occurred regardless of the defendant's conduct." *Id.* The second prong provides that restitution "should not lie if the conduct underlying the offense of conviction is too far removed, either factually or temporally, from the loss." *Id.*; *see also United States v. Dodd*, 978 F. Supp. 2d 404, 418 (M.D. Pa. 2013).

As the *Fallon* opinion demonstrates, whether under the VWPA or the MVRA, only those losses "directly and proximately" caused by a defendant's criminal conduct may be claimed as restitution. *See Atl. States Cast Iron Pipe Co.*, 612 F. Supp. 2d at 470 (recognizing that the requirement that losses be "directly and proximately" caused by the defendant's criminal conduct as used in the MVRA by analogy also applies under the VWPA). Here, the asserted "loss" to the FNS, whether determined under the VWPA or the MVRA, would have occurred regardless of Defendant's conduct. Although the Government argues that restitution in Government benefits cases appropriately restores diverted resources, the FNS has not been deprived of any resources in this case. The FNS paid the benefits in the first instance to legitimate recipients, and therefore is out nothing monetarily due to Defendant's conduct.

In *United States v. Feldman*, 338 F.3d 212, 221 (3d Cir. 2003), the Third Circuit Court of Appeals noted that in order "to determine harm (and thus actual loss), we must compare what actually happened with what would have happened if [the defendant] had acted lawfully." Here, even if Defendant had acted lawfully, the FNS still would have expended $121,677 on the legitimate recipients to whom the SNAP benefits were given. Thus, to grant restitution, either under the discretionary VWPA or the mandatory MVRA, in these circumstances would be to recompense the FNS for resources it would have spent regardless of Defendant's conduct.

As noted in *Kadhem*, this Court does not disagree that the FNS is a victim of food stamp fraud, nor does the Court take issue with the fact that the FNS has suffered harm in the diversion of benefits from their intended purpose. However, as the *Fallon* court observed, "we are unaware of any cases holding that the definition of 'victim' for scheme-based crimes diminishes the requirement that losses be 'directly' caused by the defendant's actions . . . Thus, even for scheme or conspiracy based crimes, the government bears the burden of showing that the loss suffered was 'directly' caused by defendants' actions." *Fallon*, 470 F.3d at 549 n. 12 (citations omitted). Again, under *Fallon*, the Government cannot show that the FNS suffered any monetary loss as a direct result of Defendant's conduct because the benefits would have been paid out regardless of his fraudulent actions.

Thus, for the reasons discussed herein, the Court will decline to exercise its discretionary authority to order restitution under the VWPA, as the Government has failed to show by a preponderance of the evidence that the FNS has suffered any actual pecuniary loss directly resulting from Defendant's conduct.

**B.      Plea Agreement**

Lastly the Government argues that restitution should be ordered in this case because Defendant explicitly agreed to pay restitution under the VWPA "to the victims and/or other persons or parties authorized by law in such amounts as the Court shall direct" [Doc. 111-1, ¶A.3]. The Government therefore asks the Court to enforce this provision of the agreement by ordering restitution in the amount of $121,677.

The VWPA authorizes a court to order restitution in any criminal case "to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3). Similarly, the MVRA provides that a Court shall order, if agreed to by the parties in a plea agreement, restitution to persons "other than the victim of the offense." 18 U.S.C. § 3663A(a)(3). Thus, both the VWPA and the MVRA allow the parties to agree to restitution in amounts, or to victims, that otherwise may not be authorized under the statutes.

The parties' plea agreement in this case, however, explicitly recognizes that the *"Court shall determine* the victims and/or other persons or parties who will receive restitution *as authorized by law,"* [Doc. 111-1, ¶C.4], and that the *"Court* shall determine the *amount* of restitution for which the defendant is liable" [Doc. 111-1, ¶C.5]. Thus, while the parties agreed to <u>recommend</u> that Defendant is liable for restitution in the amount of $121,677 to the FNS, they also explicitly acknowledged that this agreement was "[s]ubject to the final authority of the Court" [Doc. 111-1, ¶C.5].

For the reasons stated above, the Court has determined that no restitution should be awarded under the VWPA in this case, and this determination in no way contravenes the express terms of the parties' plea agreement.

III.   **Conclusion**

6

The ordinary meaning of "restitution" is restoring someone to a position he occupied before a particular event. *Hughey v. United States*, 495 U.S. 411, 416 (1990). Accordingly, the primary goal of restitution is remedial or compensatory. *Paroline v. United States*, 572 U.S. 434, 456 (2014); *see also Davis*, 43 F.3d at 47 (restitution awards under the VWPA are designed to compensate victims for their losses, rather than to serve retributive or deterrent purposes); *United States v. Diaz*, 245 F.3d 294, 312 (3d Cir. 2001) (the purpose of restitution under the MVRA is to compensate the victim for its losses and, to the extent possible, to make the victim whole).

Here, the FNS provided $121,677 in SNAP benefits to legitimate recipients before the fraudulent conduct of Al-Kofi and Kadhem occurred. This money would have been expended even had the fraud never happened. To now require Defendant to pay restitution to the FNS for payments it would have made to others regardless of his conduct would not restore the FNS to the position it was in before the fraudulent event, but instead would provide reimbursement to the FNS for money it would have spent anyway. The purpose of restitution is not to provide a windfall, but to make a victim whole. Because the FNS suffered no actual monetary loss as a direct result of Defendant's conduct, but instead only non-economic harm in the form of diversion of benefits from their intended purpose after the resources already had been expended on legitimate recipients, this Court will decline to exercise its discretion to award restitution under the VWPA in this case, consistent with its prior determination in *Kadhem* that restitution is not required under the MVRA.

An appropriate order will follow.

DATE: _October 24, 2022_

Stephanie L. Haines
United States District Judge

7